Filed 4/16/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LINDA HOPKINS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JUREK KEDZIERSKI as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | D063392<br><br><br>(Super. Ct. No.<br> 37-2010-00100179-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Luis R. Vargas, Judge. Reversed and remanded with directions.

Pettit Kohn Ingrassia & Lutz, Damian Michael Dolin and Christina G. Bernstein for Plaintiff and Appellant.

Horton Oberrecht Kirkpatrick & Martha, Kimberly S. Oberrecht; Horvitz & Levy, Robert H. Wright and Eric S. Boorstin for Defendants and Respondents.

I.

INTRODUCTION

In May 2008, Linda Hopkins fell from an outdoor balcony at the offices of her employer, Perfect Smile Dental Ceramics, Inc. (Perfect Smile). As a result of the injuries

she suffered in the fall, she was unable to work. Jurek Kedzierski (Jurek) and Margo Kedzierski (Margo) own Perfect Smile and also own the office building in which Perfect Smile is located.[1] Shortly after her accident, Hopkins began receiving workers' compensation benefits. In April 2009, she filed a claim with the Workers' Compensation Appeals Board, seeking additional benefits.

In September 2010, Hopkins filed this action. In the operative fourth amended complaint, Hopkins brought a negligence/premises liability claim against respondents Jurek Kedzierski, as trustee of the Jerzy Jurek Kedzierski and Margo Kedzierski Revocable Living Trust (the Trust), and against Margo, as an individual, and a negligence claim against the Trust.[2] Hopkins alleged that that the statute of limitations on these claims had been equitably tolled while she pursued her April 2009 workers' compensation claim. Hopkins also alleged that respondents were equitably estopped from asserting a statute of limitations defense based on settlement negotiations that she claimed had taken place prior to her filing the original complaint in this action.[3]

---

[1]    Jurek testified that he and Margo currently own the building through a family trust. Jurek testified that at the time of the accident, he and Margo owned the building as individuals.

[2]    Hopkins also brought a cause of action for employment discrimination against Perfect Smile. Hopkins dismissed her claim against Perfect Smile in November 2012.

[3]    Hopkins concedes that "[w]ithout the application of equitable tolling and/or equitable estoppel, Hopkins'[s] complaint is untimely as it was filed two years and [128] days after her accident." The statute of limitations for Hopkins's negligence claims against the Trust and Margo is two years. (Code. Civ. Proc., § 335.1.)

2

The trial court denied Hopkins's request for a jury trial with respect to whether equitable tolling and/or equitable estoppel apply, held a bifurcated bench trial on these issues, and determined that neither doctrine applied. Based on these findings, the court concluded that Hopkins's complaint was not timely filed. The trial court entered judgment in favor of respondents.

On appeal, Hopkins claims that the trial court erred in denying her request for a jury trial on the issues of whether the doctrines of equitable tolling and/or equitable estoppel apply so as to render her action timely. Hopkins also claims that the trial court erred in determining that neither doctrine applied.

We conclude that the trial court did not err in denying Hopkins's request for a jury trial, and further conclude that there is substantial evidence to support the trial court's determination that the doctrine of equitable estoppel does not apply. However, we conclude that the reasons that the trial court provided as the basis for its determination that the equitable tolling doctrine is inapplicable are legally insufficient and that the matter must be remanded to the trial court for factual findings as to whether Hopkins demonstrated the elements of equitable tolling.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Hopkins's injury*

On May 9, 2008, Hopkins fell from a second story balcony of the office building at which she worked while employed by Perfect Smile.

3

B.     *Hopkins's initial workers' compensation claim*

Shortly after Hopkins's accident, Perfect Smile's human resources manager, Deanna Sanchez-Aardema, filed a workers' compensation claim form on Hopkins's behalf. Hopkins began to receive workers' compensation benefits within a month of her accident and continued to receive those benefits through the December 2012 bifurcated trial in this action.

C.     *Hopkins's April 2009 workers' compensation claim*

In April 2009, Hopkins filed a "Workers' Compensation Appeals Board Application for Adjudication of Claim." In her application, Hopkins stated that she filed the April 2009 claim "because of a disagreement regarding [Perfect Smile's] liability," for several types of benefits including, "Temporary disability indemnity," "Reimbursement for medical expense," "Medical treatment," "Compensation at proper rate," "Permanent disability indemnity," "Rehabilitation," and "Supplemental Job Displacement/Return to Work." Hopkins's April 2009 claim remained pending as of the date of the bifurcated trial.

D.     *Hopkins files this action on September 14, 2010*

On September 14, 2010, Hopkins filed this action against Perfect Smile and Jurek, as an individual. Hopkins's complaint contained a negligence cause of action seeking damages for personal injuries that she suffered in the May 2008 accident.

In March 2012, Hopkins filed the operative fourth amended complaint against Perfect Smile, the Trust, and Margo, among other defendants. As applicable to this appeal, the complaint contained a negligence cause of action based on premises liability

4

against the Trust and Margo, and a separate negligence cause of action against the Trust. Hopkins alleged that the doctrines of equitable tolling and equitable estoppel applied so as to render her action timely.

Respondents filed an answer to the fourth amended complaint in which they alleged that the action was barred by the statute of limitations, among other defenses.

E.     *The bench trial on Hopkins's equitable tolling and equitable estoppel allegations*

The trial court granted respondents' application to bifurcate the trial of the statute of limitations defense from the trial on liability and damages.  In December 2012, the trial court denied Hopkins's request for a jury trial on the issues of whether the doctrines of equitable tolling and/or equitable estoppel applied so as to make her action timely.

The court held a bench trial with respect to whether the doctrines of equitable tolling and/or equitable estoppel applied.  The court heard testimony from Jurek, Margo, Sanchez-Aardema, and Hopkins's former counsel, Eric Welch.  Attorney Welch testified that he received information in September 2009 that led him to believe that Perfect Smile owned the building where the accident occurred.  In October 2009, Attorney Welch sent a demand letter to Jurek and Perfect Smile.  Golden Eagle Insurance, the insurer for both Perfect Smile and the Kedzierskis, informed Welch that it was investigating Hopkins's claim.  On March 8, 2010, Golden Eagle notified Welch that it was denying the claim.

5

F.    *The trial court's ruling and Hopkins's appeal*

In January 2013, the court issued a memorandum of decision in which it ruled that neither equitable tolling nor equitable estoppel applied to render Hopkins's claims timely. The trial court entered judgment in favor of the Trust and Margo. Hopkins timely appeals.

III.

DISCUSSION

A.    *The trial court did not err in denying Hopkins's request for a jury trial on the issues of whether equitable estoppel or equitable tolling applies*

Hopkins claims that the trial court erred in denying her request for a jury trial on the issues of whether equitable estoppel or equitable tolling apply to make her action timely. The issue of whether Hopkins is "entitled to a jury trial . . . is a pure question of law that we review de novo." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23 (*Caira*).)

1.    *General principles of law governing the right to a jury trial under California law*

Article 1, section 16 of the California Constitution provides in relevant part:

"Trial by jury is an inviolate right and shall be secured to all . . . ."

In *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 (*C & K Engineering Contractors*), the California Supreme Court outlined the basic parameters that govern the right to a jury trial under the state Constitution:

"The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) We have long acknowledged that the right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained

6

like any other social, political or legal fact.' [Citations.] As a general proposition, 'The jury trial is a matter of right in a civil action at law, but not in equity.' [Citation.]"

If an "action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citation.]" (*C & K Engineering Contractors, supra,* 23 Cal.3d at p. 9.) "The right to a jury trial for civil actions is generally limited to those causes of action (and their analogues) that were historically triable in a court of law." (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 155.)

"Complications arise when legal and equitable issues (causes of action, requested remedies, or defenses) are asserted in a single lawsuit." (*Hoopes v. Dolan, supra,* 168 Cal.App.4th at p. 156.) However, "It is well established in California jurisprudence that '[t]he court may decide the equitable issues first . . . .' [Citation.]" (*Id*. at p. 157.)

2.      *Application*

"As the name suggests, equitable estoppel is an equitable issue for court resolution." (*Hoopes v. Dolan*, *supra*, 168 Cal.App.4th at p. 161; see *C & K Engineering Contractors, supra,* 23 Cal.3d at p. 9 ["equitable estoppel may be tried by the court without a jury"].)

With respect to equitable tolling, neither party cited, and our independent research has not revealed, any California case law specifically addressing whether a party has a right to a jury trial on the issue of the potential applicability of this doctrine. However, for the following reasons, we conclude that there is no such right. Equitable tolling "is a rule of procedure adopted by the courts" (*Mills v. Forestex Co.* (2003) 108 Cal.App.4th

7

625, 650) that is " 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits . . . .' [Citation.]" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).) The doctrine of equitable tolling does not implicate any " ' "ordinary common-law rights cognizable in courts of law," ' " and is not "' "to that extent an action at law." ' [Citation.]" (*C & K Engineering Contractors, supra*, 23 Cal.3d at p. 9.) Therefore, in light of its equitable nature, we conclude that equitable tolling, "[a]s the name suggests . . . is an equitable issue for court resolution." (*Hoopes v. Dolan*, *supra*, 168 Cal.App.4th at p. 161.)

Hopkins's arguments to the contrary are not persuasive. Hopkins notes that there are California civil jury instructions concerning both equitable estoppel and equitable tolling, suggesting that the existence of these jury instructions means that a jury is to decide these issues. (See CACI Nos. 456, 457.) However, the existence of such instructions does not demonstrate that a party has a right to a jury trial on these equitable issues. Rather, the instructions are appropriate for use when a trial court "empanel[s] an advisory jury to make preliminary factual findings" (*Hoopes v. Dolan*, *supra*, 168 Cal.App.4th at p. 156), with respect to equitable estoppel or equitable tolling.[4] (See *ibid.* ["[A] jury may be used for advisory verdicts as to questions of fact [in equitable actions]"].) Hopkins also notes that equitable estoppel and equitable tolling present questions of fact. We agree. However, with respect to equitable issues, the *trial court* is

---

4      We respectfully suggest that the "Directions for Use" for CACI Nos. 456 and 457 be amended to expressly state that they are intended for such use.

8

the trier of fact.  (See, e.g., *Caira, supra,* 126 Cal.App.4th at p. 41 ["the *trial court* was the proper trier of fact of [party's] equitable claims"].)

Accordingly, we conclude that the trial court did not err in denying Hopkins a jury trial on the issues of equitable estoppel or equitable tolling.

B.     *The trial court's reasons for determining that the equitable tolling doctrine does not apply in this case are legally insufficient; the matter must be remanded to the trial court for a determination as to whether Hopkins demonstrated the required elements of equitable tolling*

Hopkins claims that the trial court erred in concluding that the doctrine of equitable tolling does not apply so as to render her action timely.  We conclude that the trial court's reasons for determining that the equitable tolling doctrine is inapplicable are legally insufficient.  We further conclude that the judgment may not be affirmed on any of the alternate grounds offered by respondents on appeal, and that the matter must be remanded to the trial court for factual determinations as to whether Hopkins demonstrated the elements of equitable tolling.

1.     *Governing law*

"The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine.  [Citations.]  It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.'  [Citation.]  Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'  [Citation.]"  (*McDonald, supra,* 45 Cal.4th at p. 99.)

9

In *Elkins v. Derby* (1974) 12 Cal.3d 410, 414 (*Elkins*), the Supreme Court held that the doctrine of equitable tolling may apply to toll the statute of limitations on a claim during the period in which a plaintiff pursues another remedy for the harm that the plaintiff suffered. The *Elkins* court adopted a line of cases in which courts had concluded that "if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " (*Id.* at p. 414, quoting *Myers v. County of Orange* (1970) 6 Cal.App.3d 626, 634 (*Myers*).)

In *Elkins,* the plaintiff suffered an injury in September 1969 while working on the defendants' premises. (*Elkins*, *supra*, 12 Cal.3d at p. 413.) Approximately 10 months after the injury, the plaintiff filed an application for workers' compensation benefits against the defendants. (*Ibid*.) A workers' compensation referee determined that the plaintiff was not an "employee" of the defendants under the applicable Labor Code provisions at the time of his injury and concluded that he was therefore ineligible for workers' compensation benefits. (*Ibid*.) The referee's decision became final in mid-December 1970, approximately 15 months after the plaintiff's injury. (*Ibid*.) Approximately a month after the referee's decision became final, the plaintiff filed a personal injury action seeking recovery for the same injury that served as the basis of his workers' compensation claim. (*Ibid*.) The trial court sustained the defendants' demurrer on the ground that the action was barred by the applicable one-year statute of limitations. (*Ibid*.) On appeal, the *Elkins* court reversed, holding that the statute of limitations had

10

been tolled for the period during which the plaintiff pursued his workers' compensation remedy. (*Id*. at p. 412.)

The *Elkins* court reasoned that the primary purpose of a limitations statute is to " '(prevent) surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " (*Elkins, supra*, 12 Cal.3d at p. 417, quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.* (1944) 321 U.S. 342, 348-349.) According to the *Elkins* court, that purpose is "normally satisfied when the defendant receives timely notification of the first of two proceedings." (*Elkins, supra,* at p. 416, fn. 3.)

In the wake of *Elkins*, the California Supreme Court has stated that in order to prove the applicability of the equitable tolling doctrine, a party must establish "three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citations.]" (*McDonald, supra,* 45 Cal.4th at p. 102.) " ' "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." [Citation.] "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." [Citation.] "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the

11

cases.  But in *Addison v. State of California* [(1978)] 21 Cal.3d 313, the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended."  [Citation.]'  [Citation.]"  (*McDonald, supra,* at p. 102, fn. 2.)

Finally, the Supreme Court has instructed that "courts . . . have, and should, 'liberally appl[y] tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute.'  [Citation.]"  (*McDonald, supra,* 45 Cal.4th at p. 102.)

2.      *The trial court's ruling*

In its memorandum of decision, the trial court ruled that Hopkins's pursuit of her workers' compensation case did not equitably toll the applicable statute of limitations. In making this determination, the trial court reasoned:

> "[Hopkins's] pursuit of her workers' compensation case and later filing of the workers' compensation appeal on April 6, 2010,[5] against her employer did not toll the applicable statute of limitations. [Hopkins] was provided workers' compensation benefits immediately after the injury and has continued to receive benefits as recently as the date of the instant trial.
>
> "In order for the statute of limitations to be tolled while [Hopkins] pursued a workers' compensation remedy, the workers' compensation claim would need to be rejected, or it would need to be determined [Hopkins] was somehow ineligible for benefits, thereby necessitating the pursuit of another remedy against the same [d]efendant.  *Elkins*[, *supra,*] 12 Cal.3d 410.
>
> "In the instant case, [Hopkins] was not denied workers' compensation benefits and was not deemed ineligible for benefits

5      Hopkins's application for adjudication of her claim with the Workers' Compensation Appeals Board was action actually filed in April *2009*, rather than April *2010*.

12

under the workers' compensation coverage provided by her employer, [Perfect Smile]. [Hopkins's] case is now against different Defendants, Jurek Kedzierski, as Trustee . . . and Margo Kedzierski, an individual, the owners of the building where [Hopkins] worked. The pursuit of the workers' compensation case against [Hopkins's] employer, [Perfect Smile,] involves a different [d]efendant, which further precludes an argument of tolling."

3. *The trial court's reasons for determining that the equitable tolling doctrine does not apply in this case are legally insufficient*

Whether the trial court provided legally sufficient reasons for determining that the doctrine of equitable estoppel does not apply in this case presents a question of law that we review de novo. (See, e.g., *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 [stating that whether a factual finding is legally sufficient to support a legal conclusion is a question of law subject to de novo review].)

Contrary to the trial court's memorandum of decision, there is neither legal nor logical support for the court's ruling that in order for equitable tolling to apply, Hopkins was required to have been unsuccessful in seeking workers' compensation benefits.[6] Although the trial court cited *Elkins*, *supra*, 12 Cal.3d 410, in support of this proposition, *Elkins* contains no such requirement. While it is true that the plaintiff in *Elkins* was unsuccessful in his attempt to obtain workers' compensation benefits (*id*. at p. 413), there is nothing in the opinion that suggests that this fact was necessary to the court's conclusion that the statute was tolled while the plaintiff "*pursued* his compensation remedy." (*Id*. at p. 412, italics added.) In fact, the logic of *Elkins* compels the opposite

---

6      As noted previously, Hopkins started to receive workers' compensation benefits shortly after her accident. Her claim for additional benefits remained pending at the time of the trial in this case. (See pt. II., *ante*.)

conclusion, namely, that tolling is premised on the "*filing* of a compensation claim" (*id.* at p. 413, italics added), and that the rejection of such a claim is *not* a prerequisite to tolling.

A plaintiff cannot know at the time he or she files a workers' compensation claim whether he or she will be successful in prosecuting that claim. If failure in the workers' compensation proceeding were a requirement for equitable tolling, such a plaintiff would always be required to file a tort claim within the ordinary limitation period in order to preserve his or her right to prosecute that tort claim. This is the precise outcome that the *Elkins* court sought to avoid. (See *Elkins, supra,* 12 Cal.3d at p. 419, and fn. 8 [lamenting "the inequity that a duplicative filing requirement might work upon an injured party" and noting that "the conscientious attorney, absent a tolling rule, would be induced in numerous cases to file in both tribunals"].) As the Court of Appeal in *Myers*, *supra*, 6 Cal.App.3d at page 636, stated in explaining its conclusion that equitable tolling may apply where a plaintiff pursues a voluntary administrative remedy:

> "[T]he question of tolling is not to be determined retrospectively depending upon the success or failure of the plaintiff in pursuing the alternative remedy. [Citation.] . . . The injured person should not be required 'to predict at his peril the precise legal theory [remedy] supporting ultimate recovery. He should not be placed in the dilemma of awaiting "jurisdictional" decisions . . . [of one tribunal] . . . while the clock of limitations ticks in his ear.' [Citation.]"

Further, the requirement that the trial court imposed in this case that the first claim be "unsuccessful" is not mentioned in the *Elkins* court's formulation of the prerequisites to equitable tolling. (See *Elkins, supra,* 12 Cal.3d at p. 414 ["if the defendant is not

14

prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one,' " quoting *Myers*, *supra*, 6 Cal.App.3d at p. 634].) *No* court has held, or even suggested, that the doctrine of equitable tolling under California law contains such a requirement. Rather, as the Supreme Court reiterated in *McDonald, supra*, 45 Cal.4th at page 102, in outlining the elements of equitable tolling, "[O]ur judicially created equitable tolling rule . . . require[s] a showing of three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citation.]" (*Ibid*.)

In rejecting the defendant's argument in *McDonald, supra*, 45 Cal.4th at page 111 that equitable tolling "should be categorically unavailable" to the plaintiff because she voluntarily abandoned the internal grievance proceeding on which her tolling claim was based, the Supreme Court stated, "Neither we nor the Courts of Appeal have ever made equitable tolling contingent on a plaintiff's waiting for resolution of an alternate proceeding . . . prior to institution of further proceedings." (*Ibid*.)

Just as the *resolution* of the alternate proceeding is not a prerequisite to the application of the equitable tolling doctrine, neither is *failure* in the alternate proceeding a prerequisite. We conclude that the trial court erred in determining that in order for equitable tolling to apply, Hopkins was required to have been unsuccessful in seeking workers' compensation benefits.

The trial court also stated that the doctrine of equitable tolling could not apply because the defendant in the workers' compensation case was Hopkins's employer,

15

Perfect Smile, while the remaining defendants in this case were Jurek, as trustee, and Margo. This too is a legally insufficient reason to support the trial court's determination that equitable tolling is unavailable in this case.

The first element of equitable tolling set forth by the *Elkins* court is that the defendant have had timely notice of the action. In discussing this requirement, the *McDonald* court noted that "[g]enerally . . . the defendant in the first claim is the same one being sued in the second." (*McDonald, supra,* 45 Cal.4th at p. 102, fn. 2.) However, this does not mean that the defendants in the two actions must be the same. Rather, the filing of the first claim must "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." (*Ibid.*) Where the first action puts the defendant in the second action on notice of the need to begin to investigate facts that form the basis of the second claim, equitable tolling may apply even where the defendants in the two actions are not the same parties. (See, e.g., *Structural Steel Fabricators, Inc. v. City of Orange* (1995) 40 Cal.App.4th 459 [concluding trial court properly determined that equitable tolling applied where subcontractor's suit against general contractor put city on notice of facts that formed the basis for second action against city]; *Stalberg v. Western Title Ins. Co.* (1994) 27 Cal.App.4th 925 [concluding equitable tolling applicable where plaintiff's quiet title suit against property owners put title insurer on notice of facts that formed the basis of second action against title insurer]; see also *Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 955 -956 ["We are aware of decisions applying equitable tolling against defendants who were not parties to the prior actions . . . involv[ing] fact situations in

16

which the defendants [in the second action] clearly had notice of the claims against them before the statutes expired," citing *Structural Steel Fabricators, Inc.* and *Stalberg*].) Thus, the mere fact the defendants in this case are not the same as in the workers' compensation proceeding[7] does not establish that equitable tolling does not apply.

It appears to be undisputed that respondents received notice of the need to begin to investigate the facts that formed the basis of Hopkins's claims well within the ordinary statute of limitations period for the claims asserted in this action.[8]  Accordingly, the trial court erred in concluding that the mere fact that the identities of the defendants in the two actions are not the same "precludes an argument of tolling."

Accordingly, we conclude that neither of the reasons that the trial court provided for declining to apply the equitable tolling doctrine on the basis of Hopkins's workers' compensation claim is legally sufficient.[9]  We must therefore conclude that the trial court

---

[7]     As noted previously, Hopkins's employer, Perfect Smile, was also originally named as a defendant in this action.  Hopkins dismissed her claim against Perfect Smile in November 2012.

[8]     Respondents note in their brief that Jurek and Margo were aware of the accident as of the day after it occurred, and that their insurer undertook an investigation into the accident.  At trial, Hopkins testified that in January 2010, the insurer interviewed her and she executed a medical authorization form permitting the insurer to review her medical records.  Welch testified that, prior to February 2010, he provided the insurer with Hopkins's medical bills and records, among other documents.

[9]     Hopkins also contends that the trial court should have found that the statute of limitations was equitably tolled during a period in which she contends the parties were engaged in settlement negotiations.  We assume strictly for the sake of this opinion that a limitation period may be *tolled* while the parties pursue settlement negotiations.  (See *Union Oil Co. of Calif. v. Greka Energy Corp.* (2008) 165 Cal.App.4th 129, 138 (*Union Oil*) [concluding that a statute of limitation period was "tolled" where plaintiff filed a

17

erred in concluding that the doctrine of equitable tolling does not apply to Hopkins's action.

4. *The judgment may not be affirmed on any of the alternate grounds that respondents offer in their brief*

Respondents contend that there are several alternative grounds for affirming the judgment. First, respondents note that the *Elkins* court stated that allowing tolling in that case would not interfere with the goal of "promptly . . . resolv[ing] disputes in order that commercial and other activities can continue unencumbered by the threat of litigation." (*Elkins, supra*, 12 Cal.3d at p. 417, fn. 4.) Respondents contend that permitting tolling in this case "would interfere with [the] goal of promptly resolving disputes" because,

---

claim against defendant's performance bond and defendant "requested settlement negotiations"]; but see Rylaarsdam et al., Civil Procedure Before Trial (The Rutter Group 2006) ¶ 6-B Statutes of Limitation [stating that the facts of *Union Oil* "clearly supported application of equitable *estoppel* . . . [and] [t]he [*Union Oil* court's] reference to equitable *tolling* seems unnecessary and erroneous," italics added]).

Even assuming that this is so, Hopkins fails to demonstrate that the trial court erred in refusing to toll the limitation period on this ground. The trial court found that "the facts presented at trial make clear there were no meaningful negotiations between [Hopkins] and [respondents] and/or [respondents'] carrier about settlement that warrant tolling the statute of limitation." Specifically, the court found that Hopkins presented "no evidence to suggest any significant negotiations actually occurred between [Hopkins] and [respondents] and/or [respondents'] carrier," and that the "undisputed evidence shows that there were no settlement offers made to [Hopkins] by [respondents] or their carrier." Hopkins fails to demonstrate on appeal that there is not substantial evidence to support these factual findings. (*Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 408 (*Marcario*) [" '[W]e are compelled to affirm the trial court's rejection of the theory [of equitable tolling] if there is substantial evidence to support its determination.' [Citation.]"].) Accordingly, we reject Hopkins's claim that the court erred in refusing to toll the statute of limitations on the basis of purported settlement negotiations between the parties. Further, to the extent Hopkins contends that trial court erred in refusing to apply the doctrine of equitable *estoppel* on the basis of purported settlement negotiations between the parties, her claim fails for the same reason. (*Cuadros v. Superior Court* (1992) 6 Cal.App.4th 671, 675 [substantial evidence standard of review applies to review of trial court's factual findings concerning equitable estoppel].)

18

"[u]nder Hopkins's theory, the statute of limitations 'continues to be tolled today'—over five years since her injury."

The plaintiff in *Elkins* suffered his injury on September 8, 1969, and filed his personal injury action on January 19, 1971, which was approximately four months after the ordinary one-year limitation period had run. (*Elkins, supra*, 12 Cal.3d at p. 413.) In this case, Hopkins filed her claim 128 days beyond the applicable limitation period, a nearly identical time period as in *Elkins*. We need not determine whether Hopkins is correct that the doctrine of equitable tolling would allow her to file her lawsuit *today*, in order to conclude that permitting tolling in this case would not materially undermine the goal of promptly resolving disputes.

Respondents also argue that, unlike in *Elkins*, the remedies that Hopkins seeks in the two proceedings are not "mutually exclusive." In this vein, respondents argue that equitable tolling should not be applied in this case because "[t]he remedies Hopkins desired—workers' compensation from her employer and tort damages from the building owner—always require two proceedings no matter the result of the first." Respondents' arguments are based on the implicit premise that equitable tolling may apply only where *all* of the damages recoverable in the second action would also have been recoverable in the first action. However, that is not the law. Equitable tolling may apply "where one action stands to *lessen* the harm that is the subject of a potential second action." (*McDonald, supra,* 45 Cal.4th at p. 100, italics added.) That is the case here. In her workers' compensation proceeding, Hopkins sought to recover reimbursement for medical expenses and permanent disability indemnity, among other benefits. Thus, the

19

workers' compensation proceeding had the potential to *lessen* the harm that is the subject of this tort action.[10]

Respondents also appear to contend that Hopkins may not avail herself of the equitable tolling doctrine because she did not "ma[ke] a rational decision to pursue one remedy before attempting the alternative." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 489, fn. 6 (*Freeman*).) Specifically, respondents argue that it was "not rational" for Hopkins to wait until after the limitations period had ended to file her tort claim because "the tort action would have been required no matter the outcome of the workers' compensation action." We are not persuaded. Neither the *Freeman* court, nor any other court, has held that making "a rational decision" to pursue one remedy before pursuing another (*ibid.*) is an element of equitable tolling. (See *McDonald, supra*, 45 Cal.4th 4th at p. 102 [listing elements of equitable tolling without reference to a "rational decision" requirement].) Moreover, as noted above, the equitable tolling doctrine may apply where the first action *lessens* a plaintiff's harm. (*Id.* at p. 100.) Thus, where a plaintiff has " 'several legal remedies' " (*Elkins, supra*, 12 Cal.3d at p. 414, quoting *Myers*, *supra*, 6 Cal.App.3d at p. 634), the plaintiff may rationally pursue the first

---

10    Respondents assert,"[A]ny workers' compensation award would not affect the tort award," but fail to demonstrate that this is so. " 'A basic premise of compensation law is that there shall be but a single recovery of benefits on account of a single injury or disability; to permit a double recovery would be to place a double burden on industry and encourage malingering; the right to recovery of compensation from more than one source is subject to the rule that a credit shall be allowed against an award for any payment to the extent that it permits a double recovery.' [Citation.]" (*Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996)14 Cal.4th 76, 82.)

20

action even if it does not afford the plaintiff all of the relief that she might be able to obtain in the second action.[11]

Similarly, Hopkins's claim of equitable tolling cannot be defeated merely because she *could* have filed her tort claim within the ordinary limitation period. (See, e.g., *Marcario*, *supra*, 155 Cal.App.4th at p. 409 ["the County simply suggests that Marcario could have filed this lawsuit during the pendency of her grievance proceeding, and thus should not be entitled to any tolling. But that is simply contrary to what *Elkins* holds. The fact that Marcario *could have* pursued her civil claim earlier simply puts her in the same position as the plaintiff in *Elkins*. And we conclude, as the Supreme Court did, that 'could have' is not the same thing as 'was obligated to' "]; cf. *Collier, supra,* 142 Cal.App.3d at p. 932 [stating that "[c]omplete inactivity on the second claim, in fact, is what 'equitable tolling' is all about," and noting that, where applicable, "this doctrine excuses the plaintiff from even filing a claim"].)

We also reject respondents' contention that the tolling period lasted for only 90 days after the filing of Hopkins's *initial* workers' compensation claim on May 12, 2008

---

11    Respondents also cite as a reason to distinguish Hopkins's situation from that of the plaintiff in *Elkins* (*Elkins, supra*, 12 Cal.3d 410) that, unlike that plaintiff, Hopkins would not be required to "advance mutually inconsistent positions" in her workers' compensation action and in this case. Even assuming that this is so, as respondents' acknowledge, the absence of inconsistency is not "a sufficient reason in and of itself to deny equitable tolling" (citing *Nichols v. Canoga Industries* (1978) 83 Cal.App.3d 956, 964). In addition, courts have recognized that requiring a plaintiff to simultaneously pursue two legal proceedings may be burdensome to the plaintiff in ways other than the potential need to take inconsistent positions. (See e.g. *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 933 (*Collier*) [stating that without tolling plaintiffs would be "compelled to incur the expense of pursuing simultaneously two separate administrative actions"].)

21

(citing Lab. Code, § 5402, subd. (b) ["If liability is not rejected within 90 days after the date the claim form is filed . . . the injury shall be presumed compensable under this division"].)  Hopkins's equitable tolling claim is not premised on her May 2008 workers' compensation claim, but rather, on her April 9, 2009 application with the Workers' Compensation Appeals Board in which she sought various additional benefits.  Respondents' argument fails because it does not address the effect of the April 9, 2009 filing.[12]

Finally, respondents contend that the judgment may be affirmed on the ground that the trial court found that Hopkins did not act reasonably and in good faith.  However, the trial court made no such finding.  The trial court's memorandum of decision is clear that its findings with respect to the conduct of Hopkins's former attorney in filing this action pertained to the issue of whether respondents should be equitably *estopped* from asserting

---

[12]     As respondents correctly note, one court has stated, "We do not believe the *Elkins* court meant the tolling period could extend for the length of time it takes to adjudicate the claimant-plaintiff's permanent disability."  (*Valdez v. Himmelfarb* (2006) 144 Cal.App.4th 1261, 1274 (*Valdez*) [stating that a final adjudication of issues regarding a claimant's permanent disability "may not occur for 10 years or more"].)  However, the *Valdez* court acknowledged that the *Elkins* court did not have to decide this issue "because the plaintiff in *Elkins* was *denied* workers' compensation benefits on the ground he was not an employee of the alleged employer" (*Valdez, supra*, at p. 1274, italics added), and, therefore, there never was "an adjudication of the plaintiff's permanent disability because he was *not* entitled to any workers' compensation benefits." (*Ibid.*, italics added.)

Similarly, in this case, neither this court nor the trial court on remand (see pt. III.B.5., *post*) need determine whether the tolling period would continue for the entire length of time it takes to adjudicate Hopkins's workers' compensation case because it is undisputed that Hopkins filed this action just 128 days after the ordinary limitation period expired.  However, we note that as the asserted tolling period grows in length, generally, the less likely a plaintiff will be able to establish that the defendant would not be prejudiced by the filing of the second action beyond the ordinary limitation period.

22

a statute of limitations defense.[13]  As respondents note, "[t]he two doctrines of equitable *tolling* and equitable *estoppel* are distinct."  (Italics added.)[14]  Thus the trial court's findings, such as that Hopkins's former counsel's "lack of due diligence and mistake . . . does not allow for equitable *estoppel*" (italics added) and that Hopkins had not shown that respondents or their insurance carrier had made any misrepresentations "that were reasonably relied upon by her former counsel . . . warranting equitable *estoppel*" (italics added), do not provide a basis for affirming the trial court's ruling that equitable *tolling* does not apply.

     5.     *The matter must be remanded to permit the trial court to make factual determinations as to whether Hopkins demonstrated the three required elements of equitable tolling*

While the case law is not entirely clear, it appears that the weight of authority supports our conclusion that whether a plaintiff has demonstrated the elements of equitable tolling presents a question of fact.  (See, e.g. *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1012 ["we are hard pressed to think of more fact-specific issues than 'accrual' and 'tolling' "]; *Marcario, supra,* 155 Cal.App.4th at p. 408

---

[13]    We discuss the court's findings in this regard in our discussion of Hopkins's claim that there is insufficient evidence in the record to support the trial court's finding that the doctrine of equitable estoppel does not apply.  (See pt. III.C., *post*.)

[14]    " ' "Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. . . .  Equitable estoppel, however, . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." '  [Citation.]"  (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383.)

23

[" 'Equitable tolling is a fact intensive issue and it is determined based upon evidence,' " quoting *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 434]; *Structural Steel Fabricators, Inc., supra*, 40 Cal.App.4th at pp. 466-467 ["[t]he issue of good faith [for purposes of the equitable tolling doctrine] presented a factual inquiry]; *Campbell v. Graham-Armstrong* (1973) 9 Cal.3d 482, 490 ["Plaintiffs' [equitable tolling] theory . . . requires a factual determination as to whether they reasonably and in good faith pursued their remedies"].)

Because the trial court concluded that the doctrine of equitable tolling did not apply based on reasons that we have rejected above, the trial court made no findings of fact with respect to any of the elements of the doctrine of equitable tolling. Accordingly, we conclude that the matter must be remanded to the trial court to permit the court to make factual findings as to whether Hopkins demonstrated the three required elements of equitable tolling. After making these findings, the trial court shall proceed to determine whether the doctrine of equitable tolling applies so as to render Hopkins's action timely.

With respect to the procedure to be employed by the trial court on remand, we recognize that the trial court has already conducted a bench trial concerning the issues of equitable tolling and equitable estoppel. We emphasize that we are not ordering the trial court to conduct a new trial. Rather, the court is free to employ whatever procedure it deems necessary and legally appropriate in making the required findings.

C.    *There is sufficient evidence in the record to support the trial court's finding that the doctrine of equitable estoppel does not apply*

Hopkins claims that there is insufficient evidence in the record to support the trial court's finding that the doctrine of equitable estoppel does not apply. Specifically, Hopkins challenges the trial court's finding that she failed to demonstrate "that there were any misrepresentations by [respondents] and/or its [insurance] carrier that were reasonably relied upon by [Hopkins's] former counsel . . . thereby warranting equitable estoppel."

1.    *Governing law and standard of review*

" ' " 'Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.' " ' [Citation.]" (*Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138 Cal.App.4th 748, 766-767.)

"The determination of whether a defendant's conduct is sufficient to invoke the doctrine is a factual question entrusted to the trial court's discretion. [Citation.] The issue is whether, viewing the evidence and all the inferences therefrom in the light most favorable to the defendants, there was substantial evidence upon which the court could reasonably have found as it did." (*Cuadros v. Superior Court*, *supra*, 6 Cal.App.4th at p. 675 [discussing the doctrine of equitable estoppel].)

25

2.   *Application*

Hopkins cites evidence on two issues that she contends demonstrate that the doctrine of equitable estoppel applies in this case.  First, she contends that the respondents' insurer and agent "advised Hopkins [in a March 2010 letter] that the owner of the subject building [where the accident occurred] was Perfect Smile, Hopkins's employer."  Hopkins appears to suggest that this misrepresentation caused her to fail to file her lawsuit against respondents until after May 9, 2010 (two years from the date of her injury), citing Welch's testimony that he did not know the identity of the true owner of the building until May 2011.  This contention fails for numerous reasons, including that the March 2010 letter does not unambiguously state that Perfect Smile is the owner of the subject building,[15] and the trial court found Welch's testimony concerning this issue to be "contradictory, self-serving, and wholly unreliable."  We may not reweigh the trial court's credibility determination.  (See, e.g, *Do v. Regents of the University of California* (2013) 216 Cal.App.4th 1474, 1492 ["On substantial evidence review, we do not 'weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from it' [citation]"].)  Moreover, the trial court reasonably found that the "ownership of the building is a matter of public record and would have revealed the correct defendants [to sue] had [Hopkins's

15     The letter states, "The exclusive remedy doctrine [i.e. the rule that workers' compensation is generally the exclusive remedy of the employee and his or her dependents against the employer for workplace injuries] applies to landowners who are in a dual capacity as a landlord and employer."  Hopkins contends that the this statement implied that Perfect Smile was both her employer and the owner of the building.

26

former counsel] conducted a meaningful investigation." In addition, the court reasonably found that any confusion as to the identity of the owners of the subject building was not a factor in Hopkins failing to file her action within the two-year period, since "the claim about not knowing who owned the building and being misled about who owned the building does not arise in any of the pleadings in this case."

Hopkins also contends that her testimony that Jurek, Margo, and Sanchez-Aardema told her that "they would take care of me until I came back to work," demonstrates that the doctrine of equitable estoppel applies. Jurek, Margo, and Sanchez-Aardema each testified that they did *not* make such representations to Hopkins. Thus, the trial court could reasonably have found that no such representations were made. As noted above, we may not reweigh the trial court's credibility determination on appeal. (See, e.g, *Do v. Regents of the University of California, supra,* 216 Cal.App.4th at p. 1492.)

Accordingly, we conclude that there is substantial evidence in the record to support the trial court's determination that the doctrine of equitable estoppel does not apply in this case.

## IV.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions for the trial court to determine whether Hopkins has demonstrated the three required elements of equitable tolling. After making this determination, the trial court shall proceed to determine whether the doctrine of equitable tolling applies so as to render Hopkins's

27

action timely.  In making these determinations, the trial court may conduct any proceedings necessary and consistent with this opinion.

Each party is to bear its own costs on appeal.


AARON, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.